# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE

|  |  |
|---|---|
| EVOLUTIONS FLOORING, INC., ET AL, | ) |
| | ) |
| Plaintiffs, and | ) |
| | ) |
| DUNHUA CITY JISEN WOOD INDUSTRY CO., LTD., et al., | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) **Consol. Court No. 21-00591** |
| | ) **Non-confidential Version** |
| Defendant, and | ) |
| | ) |
| AMERICAN MANUFACTURERS OF MULTILAYERED WOOD FLOORING, | ) |
| | ) |
| | ) |
| Defendant-Intervenors. | ) |
| | ) |
| | ) |

**REPLY BRIEF IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD OF CONSOLIDATED PLAINTIFFS AND PLAINTIFF-INTERVENORS FINE FURNITURE (SHANGHAI) LIMITED AND DOUBLE F LIMITED**

Kristin H. Mowry
Sarah M. Wyss
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Suite 810
Washington, DC 20015
202.688.3610 (ph)
202.595.8968 (fax)
trade@mowrygrimson.com

January 6, 2023

**TABLE OF CONTENTS**

I.    COMMERCE'S INCLUSION OF BACKBOARD PURCHASES IN THE VENEERS FOR LTAR PROGRAM WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE ....... 1

II.    COMMERCE'S APPLICATION OF AFA TO IMPUTE A BENEFIT UNDER THE EXPORT BUYER'S CREDIT PROGRAM WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW ....................................... 5

III.    THE COURT SHOULD GRANT THE UNITED STATES' REQUEST FOR VOLUNTARY REMAND ................................................................................ 11

IV.    FINE FURNITURE SUPPORTS AND INCORPORATES ARGUMENTS MADE BY OTHER CONSOLIDATED PLAINTIFFS ................................................. 12

CONCLUSION ................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

Both-Well Taizhou Steel Fittings v. United States, 557 F. Supp. 3d 1327 (Ct. Int'l Trade 2022) .................................................................................................................... passim

Clearon Corp. v. United States, 359 F. Supp. 3d 1344 (Ct. Int'l Trade 2019) .............................. 7

Cooper Kunshan Tire Co. v. United States, 539 F. Supp. 3d 1316 (Ct. Int'l Trade 2021)............. 7

Essar Steel Ltd. v. United States, 34 CIT 1057, 721 F. Supp. 2d 1285 (2010) ............................. 2

Essar Steel Ltd. v. United States, 678 F.3d 1268 (Fed. Cir. 2012)................................................. 2

Fine Furniture (Shanghai) Ltd. v. United States, 36 CIT 1206 (2012)........................................... 6

Fine Furniture (Shanghai) Ltd. v. United States, 748 F.3d 1365 (Fed. Cir. 2014)..................... 5, 6

Fujian Lianfu Forestry Co., Ltd. v. United States, 33 CIT 1056, 638 F. Supp. 2d 1325 (2009).... 2

Fujian Yinfeng Imp & Exp Trading Co., Ltd. v. United States, No. 21-00088, 2022 Ct. Intl. Trade LEXIS 106 (Ct. Int'l Trade Sep. 13, 2022)......................................................... 9

GPX Int'l Tire Corp. v. United States, 37 CIT 19 (2013) .............................................................. 6

GPX Int'l Tire Corp. v. United States, 780 F.3d 1136 (Fed. Cir. 2015).......................................... 6

Guizhou Tyre Co., Ltd. v. United States, 523 F. Supp. 3d 1312 (Ct. Int'l Trade 2021) .............. 10

Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States, 992 F.3d 1348 (Fed. Cir. 2021)............................................................................................................................... 2

Mid Continent Nail Corp. v. United States, 725 F.3d 1295 (Fed. Cir. 2013)............................. 3, 4

Nippon Steel Corp. v. United States, 337 F.3d 1373 (Fed. Cir. 2003) ........................................... 2

OMG, Inc. v. United States, 972 F.3d 1358 (Fed. Cir. 2020)...................................................... 3, 4

Tak Fat Trading Co. v. United States, 396 F.3d 1378 (Fed. Cir. 2005) ...................................... 3, 4

Yama Ribbons & Bows Co. v. United States, 419 F. Supp. 3d 1341 (Ct. Int'l Trade 2019) ......... 7

Yama Ribbons & Bows Co. v. United States, No. 19-00047, slip. op. 22-138 (Ct. Int'l Trade Dec. 8, 2022) ............................................................................................................................ 8

Zhejiang Junyue Standard Part Co. v. United States, 578 F. Supp. 3d 1280 (Ct. Int'l Trade 2022) .................................................................................................................................................. 8

**Statutes**

19 U.S.C. § 1677e(a)...................................................................................................................... 5

**Other Authorities**

Certain Mobile Access Equipment and Subassemblies Thereof From the People's Republic of China: Final Affirmative Countervailing Duty Determination, 86 Fed. Reg. 57,809 (Dep't of Commerce Oct. 19, 2021) ..................................................................................................... 11

Multilayered Wood Flooring From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2018, 86 Fed. Reg. 59,362 (Dep't of Commerce Oct. 27, 2021)..................................................................................................... 3

**Regulations**

19 C.F.R. 351.301(c)(2)(iv)(B)......................................................................................... 4

Consolidated Plaintiffs and Plaintiff-Intervenors Fine Furniture (Shanghai) Limited and Double F Limited (collectively, "Fine Furniture"), foreign producers and exporters of the subject merchandise, respectfully submit this reply to the response briefs of Defendant United States and Defendant-Intervenors American Manufacturers of Multilayered Wood Flooring ("AMMWF").

## I. COMMERCE'S INCLUSION OF BACKBOARD PURCHASES IN THE VENEERS FOR LTAR PROGRAM WAS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE

Contrary to the United States' and AMMWF's arguments, Commerce's determination that backboards are veneers and its inclusion of backboard purchases in the veneers for less than adequate remunerations ("LTAR") program was unsupported by substantial evidence because record evidence establishes the opposite – that backboards and veneers are two distinct products.

The United States and AMMWF argue that Commerce's decision to include backboards in the veneers for LTAR program was supported by substantial evidence because backboards meet the simplistic definition of "veneer" in the scope of the countervailing duty order on multilayered wood flooring from China, the subject merchandise. See Def.'s Resp. to Pls' Mot. for J. on the Agency Record at 19 (Nov. 23, 2022), ECF No. 63 (Nonconfidential Document) ("Def.'s Br."); AMMWF Resp. to Mot. for J. on the Agency Record at 13 (Nov. 17, 2022), ECF No. 61 (Nonconfidential Version) ("AMMWF Br."). The United States and AMMWF contend that backboards are veneers because Riverside Plywood Corp., along with its cross-owned affiliates Baroque Timber Industries (Zhongshan) Co., Ltd. and Suzhou Times Flooring (collectively "Riverside Plywood") [            ] as "very thin piece of wood," which, according to the United States and AMMWF, makes this product similar to veneers. Def.'s Br. at 20; AMMWF Br. at 12 (Nonconfidential Version). The United States and AMMWF are mistaken. Indeed, Riverside Plywood [            ] as a "very thin piece of wood," but

not all thin piece of wood are veneers.  See Letter on Behalf of Riverside Plywood to Dep't of Commerce re: Riverside Plywood Second Suppl. Resp. at 1 (Oct. 2, 2020) (Public Version) ("Riverside Plywood Second Suppl. QR") (P.R. 173).

The Court has observed that foreign governments and respondents are best situated to provide information on the existence and amount of the benefit conferred by a particular program alleged to be countervailed, if any.  Essar Steel Ltd. v. United States, 34 CIT 1057, 1070, 721 F. Supp. 2d 1285, 1297 (2010), aff'd in part and rev'd in part on other grounds, 678 F.3d 1268 (Fed. Cir. 2012).  Moreover, a respondent has "a statutory obligation to prepare an accurate and complete record in response to questions plainly asked by Commerce."  Fujian Lianfu Forestry Co., Ltd. v. United States, 33 CIT 1056, 1066, 638 F. Supp. 2d 1325, 1340 (2009); see also Habas Sinai Ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States, 992 F.3d 1348, 1352 (Fed. Cir. 2021) (stating that "a respondent 'must put forth its maximum effort to provide . . . Commerce with full and complete answers to all inquiries in an investigation'") (quoting Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003)).  As explained by Fine Furniture in its Rule 56.2 brief, given Riverside Plywood's expertise as the producer of subject merchandise and its duty to submit accurate information, the only reasonable determination was for Commerce to take as fact Riverside Plywood's representations that backboards and veneer sheets are two distinct products that are used differently in the production of subject merchandise.  Specifically, Riverside Plywood stated that [                                                                                    

                              ]."  Letter on Behalf of Riverside Plywood to Dep't of Commerce re: Riverside Plywood Response to Supplemental Questionnaire at 1, Ex. SD-3 (Sept. 8, 2020) (Proprietary Document) ("Riverside Plywood Suppl. QR") (C.R. 87-88).  Notably, sample veneers and backboard contracts provided by Riverside Plywood demonstrate that backboards and veneers

have different Chinese characters and English translations because Riverside Plywood considers backboards and veneers as two distinct products in its accounting and production records. See Letter on Behalf of Riverside Plywood to Dep't of Commerce re: Rebuttal Br. at 11-12 (June 15, 2021) (Proprietary Document) (C.R. 143); Riverside Plywood Suppl. QR at Exs. SD-2, SD-9 (Proprietary Document) (C.R.87-88). The pricing for backboards and veneers also demonstrate that they are distinct products where the [ ██████████████████ ] of Riverside Plywood's backboards purchase is [ ████████ ], which is significantly lower compared to the [ ██ ] for veneer purchases, with the [ ██ ] of [ ██████ ]. See Riverside Plywood Calculation Mem. Attach. 2, at Baroque Veneer Tab and Baroque Back Veneer Tab (Proprietary Document) (C.R. 147-148); Multilayered Wood Flooring From the People's Republic of China: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2018, 86 Fed. Reg. 59,362 (Dep't of Commerce Oct. 27, 2021) ("Final Results") (P.R. 402), and accompanying Issues and Dec. Mem. ("Final I&D Mem.") (P.R. 393). Thus, because backboards and veneers have different uses, applications and prices, Commerce's determination in including backboards in the veneers for LTAR program was unsupported by substantial evidence.

The United States further argues that the plain language of the CVD order unambiguously establishes that backboards meet the definition of veneers. Def.'s Br. at 20-21. As support, the United States cited to several cases with the premise that the "Federal Circuit has clarified in numerous instances that the order's unambiguous language governs the scope of the order." Id. (citing OMG, Inc. v. United States, 972 F.3d 1358, 1363 (Fed. Cir. 2020); Mid Continent Nail Corp. v. United States, 725 F.3d 1295, 1302 (Fed. Cir. 2013); Tak Fat Trading Co. v. United States, 396 F.3d 1378, 1382-83 (Fed. Cir. 2005)). The United States' argument is misplaced and the cases that were cited by the United States do not offer support because this appeal does not involve a

challenge to a scope ruling. See OMG, 972 F.3d at 1363 (challenging Commerce's scope ruling involving zinc masonry anchors from Vietnam); Mid Continent, 725 F.3d at 1302 (challenging Commerce's scope ruling on household tool kits from China); Tak Fat Trading, 396 F.3d at 1382-83 (challenging Commerce's scope ruling involving mushrooms from China). The question is not whether backboards are part of the scope of this case, but rather whether backboards are included in the veneers for LTAR program, which they are not because they have different uses, applications and prices, as explained immediately above. The Court should, therefore, disregard the United States' reliance on scope interpretation cases as irrelevant to the issue in this case.

Next, AMMWF argues that a new subsidy allegation specific for backboards was not necessary because Commerce reasonably considered that backboards were veneers and Riverside Plywood's backboard purchases were calculated under the veneers for LTAR program. AMMWF Br. at 14 (Nonconfidential Version). AMMWF is wrong. As explained above, backboards and veneers are not the same product. Commerce's regulations allow for any interested party to submit new subsidy allegations during the administrative review proceeding. See 19 C.F.R. 351.301(c)(2)(iv)(B) (2022). If AMMWF believed that the GOC provided unlawful subsidies for backboards, it should have made a subsidy allegation specifically on backboards as it did on plywood and veneers. Because the record in this case confirms that backboards are not veneers and there were no countervailable programs on backboards, Commerce's inclusion of backboards in the veneers for LTAR program was unreasonable.

In sum, the Court should find that Commerce's determination that the inclusion of backboards in the veneers for LTAR program was unsupported by substantial evidence because the record established that backboards were not veneers. The Court should remand the Final

Results to Commerce with instructions to recalculate the veneers for LTAR subsidy program rate by excluding Riverside Plywood's backboard purchases.

**II.     COMMERCE'S APPLICATION OF AFA TO IMPUTE A BENEFIT UNDER THE EXPORT BUYER'S CREDIT PROGRAM WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE AND NOT IN ACCORDANCE WITH LAW**

Both the United States and AMMWF fail to redeem Commerce's unlawful application of adverse facts available ("AFA") to find that respondents received a benefit under the export buyer's credit program ("EBCP").  Despite Commerce's finding that that the government of China ("GOC") failed to provide necessary information, see Def.'s Br. at 24; AMMWF Br. at 24-25 (Nonconfidential Version), Commerce acted without substantial evidence and not in accordance with law by assigning a rate to the respondents where the record established that the respondents' customers did not use the EBCP.

Commerce's application of AFA to impute a benefit under the EBCP was unsupported by substantial evidence and not in accordance with law because no information was missing from the record and Commerce wrongly conflates the operation of EBCP and usage of the program.  The statute only allows Commerce to use facts otherwise available in reaching its determination in the event that any necessary information is not available on the record or an interested party failed to provide such information by the deadline of the submission or in the form and manner requested by Commerce.  19 U.S.C. § 1677e(a).  When an interested party has failed to cooperate by not acting to the best of its ability to comply with Commerce's request, the statute authorizes Commerce to apply adverse inferences when an interested party, including a foreign government, fails to provide requested information.  Id. at § 1677e(b); Fine Furniture (Shanghai) Ltd. v. United States, 748 F.3d 1365, 1371 (Fed. Cir. 2014).  Moreover, Commerce is expected to consider evidence on the record that fills the gaps created by the government's lack of cooperation.  GPX

Int'l Tire Corp. v. United States, 37 CIT 19, 58-59 (2013), aff'd, 780 F.3d 1136 (Fed. Cir. 2015).

"Although using facts available with an adverse inference may be permissible, doing so when it collaterally affects a cooperating party is disfavored." Both-Well Taizhou Steel Fittings v. United States, 557 F. Supp. 3d 1327, 1332-33 (Ct. Int'l Trade 2022) (citing Fine Furniture (Shanghai) Ltd. v. United States, 36 CIT 1206, 1212 n.10 (2012), aff'd, 748 F.3d 1365 (Fed. Cir. 2014)).

Contrary to the United States' and AMMWF'S assertions, there was no missing information that created a "gap" on the record. The United States and AMMWF argue that information was missing from the record because the GOC did not provide Commerce with specific information and documents pertaining to the operation of the EBCP which prevented Commerce to verify the EBCP. See Def.'s Br. at 26; AMMWF Br. at 24 (Nonconfidential Version); see also Final I&D Mem. at Cmt. 1 (P.R. 393). The United States also contends that the GOC's refusal to provide the 2013 revisions to the Ex-Im Bank's Administrative Measures further prevented Commerce from identifying relevant transactions related to the program. See Def.'s Br. at 32. Commerce stated that without the revisions, it does not have "{a} complete understanding of the program {which} provides a 'roadmap' for the verifiers by which they can conduct an effective verification of usage." Final I&D Mem. at Cmt. 1 (P.R. 393). But, there was no "gap" or information that was missing from the record because Commerce received confirmations from the GOC and non-use certifications from Jiangsu Senmao's and Riverside Plywood's U.S. customers confirming that they did not benefit from the EBCP. See Letter on Behalf of the GOC to Dep't of Commerce re: GOC Section II Questionnaire Resp. at 9-11 (July 16, 2020) (Proprietary Version) ("GOC Initial QR") (C.R. 51-70); Letter on Behalf of Riverside Plywood to Dep't of Commerce re: Riverside Plywood Initial Questionnaire Resp. at Ex. 11c (July 13, 2020) (Proprietary Document) ("Riverside Plywood Initial QR") (C.R. 27-50); Letter on Behalf of

Jiangsu Senmao to Dep't of Commerce re: Section III Questionnaire Resp. at Ex. 8 (July 6, 2020) (Proprietary Document) ("Jiangsu Senmao Initial QR") (C.R. 15-25). Instead of verifying the non-use of EBCP based on information available on the record, Commerce chose to conduct a fishing expedition and request additional information from the GOC by stating that without certain information and documents on the operation of EBCP, "it would be unreasonably onerous" to verify claims of non-use. See Final I&D Mem. at Cmt. 1 (P.R. 393).

The Court has consistently held that Commerce's application of AFA is unreasonable when cooperative respondents have provided evidence of non-use from EBCP. See e.g., Both-Well, 557 F. Supp. 3d at 1334-35 (holding that if Commerce wished to continue using AFA upon remand Commerce "must attempt to verify the non-use certifications by either asking {the respondent} to have its U.S. customers explain in detail how the customers were able to certify that they did not either directly or indirectly benefit from EBCP, or through some other alternative means of verifying the non-use certifications"); Cooper Kunshan Tire Co. v. United States, 539 F. Supp. 3d 1316, 1328 (Ct. Int'l Trade 2021) ("Commerce did not explain sufficiently the reason that the missing information on the threshold criteria prevented Commerce from verifying the non-use information on the record"); Clearon Corp. v. United States, 359 F. Supp. 3d 1344, 1357 (Ct. Int'l Trade 2019) (stating that the respondent and GOC provided "a good deal" of evidence that the customers did not use the EBCP); Yama Ribbons & Bows Co. v. United States, 419 F. Supp. 3d 1341, 1348 (Ct. Int'l Trade 2019) (stating that "Commerce appears to have lost sight of the issue, which was not whether Commerce had a 'complete and reliable understanding of the program . . .' but whether {the respondent} did, or did not, use or benefit from that program").

Most recently, the Court sustained Commerce's remand redetermination in finding that a respondent did not benefit from the EBCP after Commerce reconsidered its determination by

relying on the respondent's and GOC's statements on the record that none of the respondent's

customers used the program during the POR as evidenced by the customers' non-use certificates.

Yama Ribbons & Bows Co. v. United States, No. 19-00047, slip. op. 22-138 at 7-9 (Ct. Int'l Trade

Dec. 8, 2022).  In another recent case, the Court held that Commerce's application of AFA to the

EBCP was not supported by substantial evidence because there was no gap in the record of the

administrative review proceeding.  Zhejiang Junyue Standard Part Co. v. United States, 578 F.

Supp. 3d 1280, 1295 (Ct. Int'l Trade 2022).  There, the Court noted that it

> has issued several opinions reviewing the legal and factual sufficiency of
> Commerce's use of adverse facts available in cases where China has failed to
> provide requested information about the operation of the Export Buyer's Credit
> Program. On similar factual records, the Court has rejected Commerce's position
> that information about the operation of the Export Buyer's Credit Program is
> necessary for it to verify a respondent's claimed non-use of the program.

Id. at 1292 (emphasis added).  The Court further explained that "Commerce's statutory duty was

to determine whether and to what extent the Export Buyer's Credit Program provided a benefit to

{the respondents}" and Commerce abandoned its duty to verify information available on the record

"by insisting that without the operational information" of the EBCP, non-use verifications would

be too burdensome.  Id. at 1294.  Specifically, Commerce did not verify or attempt to verify the

mandatory respondents' claims that their U.S. customers did not use the EBCP.  Id. at 1285.  The

Court eventually remanded the issue to Commerce and directed Commerce on remand to:

> either (1) find a practical solution to verify the non-use information on the record,
> such as the reopening of the record to issue supplemental questionnaires to
> respondents and their U.S. customers . . . ; or (2) recalculate the countervailing duty
> rates for {the respondents} to exclude the subsidy rate for the Export Buyer's Credit
> Program.

Id. at 1295.  The Court's reasoning in Zhejiang Junyue is persuasive and this Court should apply

the same reasoning here because information regarding the operation of EBCP was unnecessary

as the GOC has confirmed that "none of the respondents or its cross-owned affiliat{es} has applied

or received benefits under {the} program." Letter on Behalf of the GOC to Dep't of Commerce re: GOC Suppl. Questionnaire Resp. at 4-6 (Sept. 8, 2020) (Public Version) ("GOC Suppl. QR") (P.R. 155-156). The GOC also explained that the exporter is the entity that could confirm and verify whether it benefitted from the EBCP because "if there is a loan under the Export Buyer's Credit program, the Chinese exporter should be aware of the buyer's receipt of loans and should be involved in the loan evaluation proceeding and in particular in the post-lending loan management." Letter on Behalf of the GOC to Dep't of Commerce re: GOC Section II Questionnaire Resp. at 9-10 (July 16, 2020) (Public Version) ("GOC Section II QR") (P.R. 107-127). Jiangsu Senmao and Riverside Plywood also confirmed that neither the respondents nor their customers, as evidenced by the non-use certificates, benefitted from the EBCP. See Riverside Plywood Initial QR at 22, Ex. 11c (Proprietary Version) (C.R. 27-50); Jiangsu Senmao Initial QR at 13, Ex. 8 (Proprietary Version) (C.R. 15-25).

Further, the United States' and AMMWF's citation to Fujian Yinfeng Imp & Exp Trading Co., Ltd. v. United States, No. 21-00088, 2022 Ct. Intl. Trade LEXIS 106 (Ct. Int'l Trade Sep. 13, 2022) is inapplicable here. See Def.'s Br. at 26, 32-35; AMMWF Br. at 19, 24-29. In that case, the Court held that Commerce's determination to apply AFA for EBCP was supported by substantial evidence because Commerce explained the missing information to verify EBCP non-use. Fujian Yinfeng, 2022 Ct. Intl. Trade LEXIS 106, at *14. In its reasoning, the Court stated that the Chinese government "claims to have searched official records to confirm that none of the company's customers received EBCP credits during the period of investigation" but ultimately held that "the Chinese government failed to provide any documentation to show on what basis the purported search was conducted." Id. Unlike the facts presented in that case, during the administrative review proceeding, the GOC sufficiently explained how it was able to verify the

non-use of the EBCP program.  See GOC Suppl. QR at 4-6 (Public Version) (P.R. 155-156); GOC Section II QR at 9-10 (Public Version) (P.R. 107-127).  The GOC confirmed that none of Jiangsu Senmao's and Riverside Plywood's U.S. customers used the EBCP where "{t}he Ex-Im Bank {} searched its records to confirm that these customers did not receive credits under the Export Buyer's Credit program."  GOC Section II QR at 9-10 (Public Version) (P.R. 107-127).  Aside from the U.S. customers, the Ex-Im Bank is the entity that can verify whether Jiangsu Senmao's and Riverside Plywood's customers obtained a benefit from the EBCP because "after the foreign buyers make loan applications under the Export Buyer's Credit program, the Ex-Im Bank carries out an on-site investigation and/or a non-on-site investigation to verify the performance capability and credit level of the Chinese exporters."  Id. at 10.  Notably, the GOC also provided screenshots from the Ex-Im Bank evidencing that the customers did not receive credits under the EBCP.  See GOC Suppl. QR at Ex. SQ-4 (Proprietary Version) (C.R. 81-82).

Additionally, the United States wrongly contends that the GOC's refusal to provide names of intermediary banks or sample EBCP documents that would help identify EBCP transactions prevented Commerce from reviewing financial documents from respondents' customers to verify non-use.  See Def.'s Br. at 30; see also Final I&D Mem. at Cmt. 1, p. 28 (P.R. 393).  As the Court has explained in other instances,

> Commerce's explanation of why the information it seeks from the GOC is useful is a necessary, but not sufficient, justification for its determination that it cannot verify the information . . . .  Put simply, Commerce fails to show that the information it seeks is the only information it can use to verify the non-use certifications.

Both-Well, 557 F. Supp. 3d at 1335 (citing Guizhou Tyre Co., Ltd. v. United States, 523 F. Supp. 3d 1312, 1359-1361 (Ct. Int'l Trade 2021)).  Instead of forgoing its obligation to verify information altogether by noting that the task is "impossible," Commerce can devise other methods of verifying non-use of the EBCP.  For example, Commerce can issue questionnaires to Jiangsu Senmao and

Riverside Plywood and their customers requesting additional information regarding their financing activities. See Certain Mobile Access Equipment and Subassemblies Thereof From the People's Republic of China: Final Affirmative Countervailing Duty Determination, 86 Fed. Reg. 57,809 (Dep't of Commerce Oct. 19, 2021), and accompanying Issues and Dec. Mem. at Cmt. 5. Commerce can also verify the non-use certifications by visiting the mandatory respondents and their U.S. customers where the customers "may assist Commerce with cross-referencing the importers' and exporter's records to see if any funds originated from the China Export-Import Bank." Both-Well, 557 F. Supp. 3d at 1337. Put simply, Commerce's inability to verify non-use was not constrained by the GOC because there are other alternative avenues available to Commerce should it chose to do so.

In sum, this Court should find that Commerce's Final Results were unsupported and not in accordance with law because there was no missing information on the record and the respondents fully cooperated during the administrative review process. The Court should remand this issue to Commerce with instructions to find non-use of the EBCP by Jiangsu Senmao and Riverside Plywood and remove any corresponding benefit assigned under this program.

## III.   THE COURT SHOULD GRANT THE UNITED STATES' REQUEST FOR VOLUNTARY REMAND

Fine Furniture supports the United States' requests for voluntary remand to further evaluate the use of AFA on Jiangsu Senmao's use of the EBCP. Def.'s Br. at 35-37. If the Court determines that backboard is considered veneer, Fine Furniture also supports the United States' request for voluntary remand for Commerce to correct Riverside Plywood's backboard veneer calculation pursuant to Commerce's corrections to the benefit calculations for fiberboard and veneer in the final results. Id.

**IV.    FINE FURNITURE SUPPORTS AND INCORPORATES ARGUMENTS MADE BY OTHER CONSOLIDATED PLAINTIFFS**

Fine Furniture concurs and incorporates by reference the arguments made by Riverside Plywood and other consolidated plaintiffs in their response briefs.

**CONCLUSION**

For the foregoing reasons, the Court should grant Fine Furniture's Motion for Judgement Upon the Agency Record because Commerce's Final Results were unsupported by substantial evidence and not in accordance with law.  Fine Furniture requests that the Court remand the Final Results to Commerce for a determination in accordance with the arguments presented in this proceeding.

Dated: <u>January 6, 2023</u>

<u>/s/ Kristin H. Mowry</u>
Kristin H. Mowry
Sarah M. Wyss
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Fine Furniture*

**CERTIFICATE OF COMPLIANCE**

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Kristin H. Mowry, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures. Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for this brief is 3696 words.

/s/ Kristin H. Mowry
Kristin H. Mowry
Sarah M. Wyss
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Suite 810
Washington, DC 20015
202.688.3610 (ph)
202.595.8968 (fax)
trade@mowrygrimson.com
*Counsel to Fine Furniture*

Dated: January 6, 2023